MARTIN v. DEGNON CONTRACTING CO.

(Supreme Court, Appellate Division, Second Department. June 12, 1908.)

1. MASTER AND SERVANT—LIABILITY FOR INJURIES TO SERVANT—ACTS CONSTITUTING NEGLIGENCE—ERROR OF JUDGMENT.

Tunneling under a river was performed by the use of a shield, which was a circular hoop of metal as large as the tunnel. The shield was provided with cutting edges extended forward about a foot or a foot and a half, and that part overhead formed a roof under which the miners might work in comparative safety. The cutting edges from time to time became dull and it was necessary to sharpen them. Plaintiff, a miner, discovering sand and stone falling, the shield proper being at the time about four feet from the earth being mined, informed his foreman, who suggested that the shield be pushed forward; but this the walking boss would not allow, and he directed that part of the tunnel ahead of the shield be shored up. While plaintiff and a fellow laborer were engaged in

doing so, a rock fell breaking plaintiff's leg. *Held*, that the determination of the question where the shield should be stopped for necessary repairs required the exercise of judgment, and the walking boss' possible mistake in not permitting the shield to be pushed forward was an error of judgment, for which the employer was not liable.

2. SAME—ASSUMPTION OF RISK.

In the absence of any negligence by the employer in the manner in which it directed the shoring up of a tunnel to be done, the employé directed to do the work, who was a miner of experience and knew what was to be expected, assumed the risk.

Appeal from Trial Term, Queens County.

Action by Patrick Martin against the Degnon Contracting Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Argued before WOODWARD, HOOKER, GAYNOR, RICH, and MILLER, JJ.

Wm. J. McArthur, for appellant.

Rutherford B. Meyer (Eugene Lamb Richards, Jr., on the brief), for respondent.

HOOKER, J. Plaintiff has been nonsuited in this action of negligence. It is almost impossible, from a reading of the plaintiff's evidence, to ascertain just how this accident happened; but the testimony of Johnson, the defendant's foreman, and that of Welch, the assistant foreman, seems to clear the situation up. The defendant was engaged in digging one of the tunnels under the East river, and the plaintiff was one of the so-called miners. The work was being performed by the use of a shield, which was a great circular hoop of metal as large as the tunnel which was being dug. It seems that means were provided for closing this shield and opening it again, so as to allow men to proceed forward from the shield and mine away the earth. The circular part of the shield at its front end was provided with cutting edges, and from time to time as the work progressed this shield was by pneumatic power forced onward; the cutting edges assisting in its forward progress. From time to time the cutting edges became dull and it was necessary to sharpen them. These cutting edges extended forward from the main body of the shield about a foot or a foot and a half, and that part of the cutting edge which happened to be overhead formed a roof under which the miners might work in comparative safety, with pick and shovel attacking the face of earth into which the tunnel was to be bored. At times when it was impossible to use the cutting edges a hood was provided, which extended somewhat further forward from the shield and was placed overhead to protect the men in the same general way. For about a week prior to this accident, and at the time it happened, the dirt being mined was of such a character that the cutting edges of the shield could be used. At the time of the accident it seems that the shield proper had been pushed forward to within about four feet of the face of earth which was being mined, and the plaintiff, discovering some sand and stone falling down, went and advised his foreman and another, a superintendent in charge called the "walking boss." They proceeded at once to the place of the dis-

turbance, and the foreman suggested that the shield be pushed forward. The walking boss who seemed to be his superior, would not allow this done, alleging that the cutting edges needed to be repaired, and until this could be done he directed that the part of the tunnel ahead of the shield proper should be shored up by the use of timbers. The plaintiff and a fellow laborer were given timbers and directed to go into the space which intervened between the shield and the tunnel and shore it up. While they were engaged doing that work, a rock became dislodged from above, and, falling down, broke the plaintiff's leg, whereby he sustained the injuries for which he claims damages in this action.

The appellant urges that the defendant was negligent in placing plaintiff at work without providing him with the usual means of protection by the use of the shield. It is apparent from the evidence, however, that it was necessary as a part of this work to repair the cutting edge of the shield from time to time. When this should be done required the exercise of good judgment by Murphy, the walking boss, because the preparation for and the execution of such repairs absolutely prohibited the pushing forward of the shield. In this connection it may be admitted in the discussion of this appeal that Murphy, the walking boss, was intrusted with superintendence, and that his act in determining whether the shield should be pushed forward was an act of superintendence, and that if he had been negligent in making this determination the defendant would have been liable. But, if Murphy erred, it was not more than an error in judgment. The cutting edge required repair from time to time in order that the general work might be prosecuted properly and with diligence, and it seems to me that it was wholly a matter of judgment with Murphy to determine when the shield should be stopped back for the purpose of this repair, especially in view of the fact that the mere holding back of the shield and refusing to push it forward was not the cause of the dislodgment of of the rock which broke the plaintiff's leg. The shoring up of the face and the roof of the tunnel, when for any reason the shield could not be pushed forward, was the usual and ordinary method of dealing with the situation. Possibly the shield might have been pushed through this four feet and allowed to wait for the repairs, in which case the ensuing shoring which would have been necessary to permit them might not have been attended by the fall of earth and stone. There is no suggestion that the character of the earth removed from the tunnel was such, however, as to indicate to Murphy, the walking boss, that a less dangerous place might be expected to be encountered a few feet further on. The determination of the question where the shield should be stopped for the necessary repairs required the exercise of judgment, and Murphy's possible mistake here was not the negligence of the defendant, but rather an error of judgment, for which the defendant is not liable.

No suggestion is made, and no proof was offered tending to establish, that the defendant was negligent in the manner in which it directed that the shoring should be done; and in the absence of any neg-

ligence on the part of the defendant in this respect the plaintiff, who was a miner of experience and knew what was to be expected, assumed the risk.

The judgment should be affirmed, with costs.